OPINION
Appellants, Daniel King and Beverly King, appeal the judgment entry of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellee, Vindicator Printing Company.
On July 19, 1995, appellant Daniel King was struck when Robert A. Zell ("Zell") turned a vehicle he was driving into the path of appellant, who was riding a motorcycle. A collision occurred and appellant suffered injuries. At the time of the accident, Zell was driving a vehicle owned by his sister Yvonne Thompson ("Thompson"), who had requested him to drive while she delivered copies of The Youngstown Vindicator-Telegram ("Vindicator-Telegram) to residential customers.
Thompson had signed a lease for a subscribers' list with appellee. Under the terms of the lease, Thompson purchased copies of the Vindicator-Telegram at wholesale prices from appellee. Appellee then provided Thompson with a list of Vindicator-Telegram subscribers, to whom Thompson would resell the papers. The record shows that Thompson was not paid a salary or wage for her work, but rather, received income from the sale of the newspapers. Appellee never told Thompson how or when to deliver the paper, never told her what to charge for the papers, and did not specify the order or route she must take in delivering the papers. Additionally, appellee did not provide Thompson with vehicle liability insurance, life insurance, or health insurance. Moreover, she used her own vehicle for delivering the papers and was not provided any mileage compensation. Thompson was permitted to use any helpers or substitutes she needed to deliver the paper. Her automobile did not have any markings indicating that it was being operated in behalf of appellee. Finally, the agreement between Thompson and appellee simply required her to accomplish delivery of the newspapers on her list.
The record further shows that Zell had previously been a home delivery carrier for appellee prior to the accident, but did not have any current agreements with appellee at the time of the accident. On the day in question, Zell was merely helping Thompson with her route by driving Thompson's vehicle while she stuffed papers.
On June 17, 1997, appellee filed a motion for summary judgment. Appellee's motion was granted on September 16, 1997. Appellants appealed and on January 4, 1999, this court affirmed the trial court's granting of summary judgment with respect to counts II and III of appellants' complaint, on the issues of negligent entrustment and negligent retention of an agent. However, we reversed with respect to counts I and IV, on the issues of negligence and loss of consortium. Pursuant to our remand, the appellee's motion for summary judgment with respect to counts I and IV came before the trial court on June 17, 1999. On June 30, 1999, the trial court, once again, granted appellee's motion for summary judgment with respect to those counts. Appellants have now timely appealed this matter and raise the following assignment of error:
 "The trial [c]ourt committed reversible error when granting [appellee's] [m]otion for [s]ummary [j]udgment when facts and law were present upon which reasonable minds could differ."
In this assignment of error, appellants contend that appellee is vicariously liable for the injuries sustained by appellant Daniel King under the doctrine of respondeat superior. In support of their claim, appellants argue that Zell acted as an agent of appellee in driving the vehicle in which appellee's newspapers were being delivered. Specifically, appellants claim that Zell was either an agent of appellee's directly or through his service in support of Thompson. Thus, appellants aver that the trial court erred in granting summary judgment in favor of appellee.
In order for appellee to prevail on its motion for summary judgment, it must establish that there was no genuine issue as to any material fact, that, as a matter of law it was entitled to judgment, and that reasonable minds could only conclude that judgment should be rendered against the non-moving party. Civ.R. 56; Rush v. U.S. Air, Inc. (1984),19 Ohio App.3d 301, 303.
Pursuant to the doctrine of respondeat superior, an employer is liable in certain situations for the wrongful acts of his employee. Conway v.Calbert (1997), 119 Ohio App.3d 288, 291; Mayfield v. Boy Scouts of Am.
(1994), 95 Ohio App.3d 655, 660. However, persons who are considered independent contractors will not make other parties, with whom they contract, liable for wrongful acts under the doctrine of respondeatsuperior. See, generally, Calbert, 119 Ohio App.3d 288; Mayfield,95 Ohio App.3d 655; Pfau v. Cincinnati Enquirer (Mar. 30, 1987), Warren App. No. CA 86-03-019, unreported, 1987 WL 8935. Whether a party is an independent contractor or an employee is an issue to be decided on a case-by-case basis. Pfau, supra, unreported, at 1. In order to make such a determination, a broad range of factors must be examined and assessed concerning the right to control the means or manner of the work to be performed by the party causing the harm. Marshall v. Aaron (1984),15 Ohio St.3d 48, 49.
In Pfau, the Cincinnati Enquirer ("Enquirer") was sued for injuries sustained after an individual delivering Enquirer newspapers struck the appellant with his motor vehicle. In that case, the Enquirer was properly granted summary judgment in its favor since the delivery person was deemed to be an independent contractor, thus precluding liability under the doctrine of respondeat superior. Pfau, supra, unreported, at 1, 4. In support of its position, the reviewing court concluded that the delivery person: (1) purchased the actual papers at wholesale cost, (2) permitted him to sell the papers at any desired price, (3) used his own vehicle for delivery and paid all costs and expenses associated with the use of his vehicle without reimbursement, (4) was permitted to hire any helpers or assistants necessary to aid in delivering the newspapers, (5) could deliver the newspapers anytime in the morning before a specified ending time established by the newspaper, (6) could use his own supplies or pay for standard supplies from the newspaper company, (7) took all actions necessary for obtaining payment, (8) was free to deliver anywhere he wanted away from his geographical route, (9) could deliver other materials along his route so long as they were not inserted into the newspapers, and (10) was never sent wage statements or paid taxes through the newspaper. Id. at 2-3.
Also, in Fankhauser v. Knight-Ridder Newspaper (1986),27 Ohio App.3d 236, 237-238, the reviewing court held that the newspaper delivery person was an independent contractor, and thus, the newspaper could not be liable for him having struck the appellant with his vehicle during the time he was delivering newspapers. The court stated that he was an independent contractor because:
 "The newscarriers sign a contract, are required to buy the newspapers from the Beacon Journal [the newspaper company], are responsible for collecting their own payments and must suffer the loss if the customer does not pay them. They buy their supplies, either from the Beacon Journal or elsewhere. They do have a route, but may solicit customers outside the route and are not limited to carrying only the Beacon Journal but may deliver newspapers of other publishers, if they choose. They must find their own substitutes or helpers and make their own financial arrangements with those helpers. They may purchase accident insurance on their own; they are not covered by the paper. Their income is not reported on a W-2." Id. at 237.
The facts in the case sub judice are similar to those in Fankhauser andPfau. In this case, Thompson signed a lease with appellee stating that appellee would lease to her a list of regular daily and Sunday purchasers of the paper to whom she would sell copies of the paper after purchasing them at wholesale price from appellee. Thompson was not paid a salary or wage for her work. Instead, she received income solely from the sale of the newspapers. Appellee never told Thompson how or when to deliver the paper, never told her what to charge for the papers, and did not specify the order or route she must take in delivering the papers. Appellee did not provide Thompson with vehicle liability insurance, life insurance, or health insurance.
Additionally, Thompson used her own vehicle for delivering the papers and was not provided any mileage compensation. Thompson was permitted to use any helpers or substitutes she needed to deliver the paper. Her automobile did not have any markings indicating that it was being operated in behalf of appellee.
Finally, Robert White, a district manager for appellee, who delivered the papers to Thompson that she had purchased from appellee, testified that Zell did not have a lease agreement with appellee at the time of the accident. Although White would occasionally give papers to Zell, in July 1995, he did so only because Zell had told him that he was there on behalf of Thompson.
In reviewing the facts and circumstances of this case, reasonable minds could only conclude, construing the evidence most strongly in favor of appellants, that Thompson was an independent contractor and not appellee's employee. The record shows that Zell had no formal status with the appellee at the time of the accident; therefore, the trial court did not err in granting summary judgment in favor of appellee. Thus, appellant's assignment of error is meritless.
For the foregoing reasons, appellant's assignment of error is not well-taken, and the judgment of the Trumbull County Court of Common Pleas is affirmed.
 ____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.