[Cite as *Soloman v. Dayton Window & Door Co., L.L.C.*, 196 Ohio App.3d 16, 2011-Ohio-6182.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| SOLOMAN, | : | |
| | : | Appellate Case No. 24200 |
| Appellant, | : | |
| | : | Trial Court Case No. 09-CV-01370 |
| v. | : | |
| | : | |
| DAYTON WINDOW & DOOR CO., | : | (Civil Appeal from |
| L.L.C. et al., | : | Common Pleas Court) |
| | : | |
| Appellees. | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 2nd day of December, 2011.

· · · · · · · · · · ·

Skilken & Skilken and Thomas E. Skilken, for appellant.

Michael DeWine, Attorney General, and David J. Fierst, Assistant Attorney General, for appellee the Ohio Bureau of Workers' Compensation.

Brian P. Perry, for appellee Dayton Window & Door Co., L.L.C.

· · · · · · · · · · · ·

HALL, Judge.

{¶ 1} Ray Soloman appeals a trial court's determination that he is not entitled to receive workers' compensation benefits for an eye injury he suffered while installing replacement windows for Dayton Window & Door Co., L.L.C. The court concluded that when he was injured, Soloman was not Dayton Window's employee. The sole issue in this

appeal is whether this conclusion is contrary to the manifest weight of the evidence. Because it is not, we affirm.

{¶ 2} Dayton Window was hired to install around 40 replacement windows in an apartment building. This was a three-day job that the company did in June 2005. Paul Fiamengo, Dayton Window's owner, realized that the person who would be doing the job, Ron Switzer, could not complete the job by himself within three days. So, over the telephone, Fiamengo hired Soloman to install the replacements too. During their conversation, Soloman asked for two weeks' worth of work, because he would be starting another job then, but Fiamengo told him that the apartment job would last only three days. Fiamengo told Soloman to be at the work site on June 22 at 8:30 a.m.

{¶ 3} Soloman showed up at the appointed time and started working. Soloman and two of the apartment's tenants testified that Switzer worked with Soloman on the first few windows, giving Soloman instructions on how to remove the old windows and install the replacements. Soloman continued to work that day and worked the next day. Just after noon on the third day, June 24, while Soloman was working to remove a metal bracket from a window frame, a small piece of metal chipped off and struck one of Soloman's eyes. Soloman immediately sought medical care, and he did not return to the job site.

{¶ 4} Soloman filed an application for benefits with the Bureau of Workers' Compensation. After a hearing, a district hearing officer denied Soloman's application, finding that he was not Dayton Window's employee at the time he was injured. Soloman appealed the decision, and a hearing was held before a staff hearing officer. This officer also denied Soloman's application, finding likewise that he was not Dayton Window's employee

and further finding that he was an independent contractor. Soloman then appealed to the Industrial Commission, but the commission refused to hear the appeal.

{¶ 5} In February 2009, Soloman appealed to the Montgomery County Court of Common Pleas.[1] The parties waived their right to a jury trial, and the appeal was tried to the court. Upon de novo review of the law and facts, and based on the evidence presented to it,[2] the trial court determined that Soloman did not have the right to receive workers' compensation benefits because he did not meet one of the workers' compensation statute's definitions of "employee" at the time he was injured.

{¶ 6} Soloman appealed to this court.

{¶ 7} The only issue before a trial court in an appeal from a staff hearing officer's order is the claimant's right to receive, or to continue to receive, workers' compensation benefits. See *Staton*, 1997 WL 101846, citing *Afrates v. Lorain* (1992), 63 Ohio St.3d 22, paragraph one of the syllabus; R.C. 4123.512(D).[3] In addition to showing that the injury caused the disability, to establish a right to benefits, the claimant must show that the injury

---

[1]This was actually a re-appeal. A claimant has 60 days to appeal a staff hearing officer's order from which the commission refused to hear an appeal. See R.C. 4123.512(A). Soloman timely appealed in February 2006. But, in April 2008, he voluntarily dismissed the appeal without prejudice. The savings statute, R.C. 2305.19, allowed Soloman to refile his appeal within one year. See *Lewis v. Connor* (1985), 21 Ohio St. 3d 1, syllabus ("Where a notice of appeal is filed within the time prescribed by R.C. 4123.519 and the action is dismissed without prejudice after expiration of that time, R.C. 2305.19, the savings statute, is applicable to workers' compensation complaints filed in the common pleas court").

[2]"R.C. 4123.519 [now R.C. 4123.512] contemplates not only a full and complete de novo determination of both facts and law but also contemplates that such determination shall be predicated not upon the evidence adduced before the Industrial Commission but, instead, upon evidence adduced before the common pleas court as in any civil action[.]" *Youghiogheny & Ohio Coal Co. v. Mayfield* (1984), 11 Ohio St.3d 70, 71; *Staton v. Excalibur Show Club* (Feb. 28, 1997), Montgomery App. Nos. 15899 and 15924, 1997 WL 101846.

[3]This division provides that "[t]he court, or the jury under the instructions of the court, if a jury is demanded, shall determine the right of the claimant to participate or to continue to participate in the fund upon the evidence adduced at the hearing of the action."

arose out of and in the course of employment. *White Motor Corp. v. Moore* (1976), 48 Ohio St.2d 156, paragraph one of the syllabus, which in part requires the claimant to prove his employment status. The claimant must show that at the time he was injured, he was an "employee," as that word is defined in the workers' compensation statute, see R.C. 4123.01(A)(1).

{¶ 8} Here, the parties stipulated that the sole issue before the trial court was whether Soloman was Dayton Window's employee. Specifically, the issue was whether he met the definition of "employee" in R.C. 4123.01(A)(1)(c), which defines "employee" as "[e]very person who performs labor or provides services pursuant to a construction contract, as defined in section 4123.79 of the Revised Code, if at least ten of the following criteria apply." The parties agreed that Soloman provided services under a "construction contract,"[4] so the only issue was whether at least ten of the 20 statutory criteria applied. In its written decision, the trial court considered each criterion, examining the evidence relevant to each one. It found that the evidence established that eight applied. Consequently, the court concluded that Soloman was not Dayton Window's employee. Based on this conclusion, the court determined that Soloman was not entitled to workers' compensation benefits.

{¶ 9} Soloman contends that the manifest weight of the evidence is contrary to this determination. "Where an appellant challenges a judgment as being against the manifest weight of the evidence, our scope of review is limited. 'An appellate court must not substitute its judgment for that of the trial court where there exists some competent and

---

[4]" 'Construction contract' means any oral or written agreement involving any activity in connection with the erection, alteration, repair, replacement, renovation, installation, or demolition of any building, structure, highway, or bridge." R.C. 4123.79(C)(2).

credible evidence supporting the findings of fact and conclusions of law rendered by the trial court.' " *Laukhart v. Admr., Ohio Bur. of Workers Comp.* (May 24, 1996), Montgomery App. No. 15448, 1996 WL 280748, quoting *Myers v. Garson* (1993), 66 Ohio St.3d 610, 616. Soloman contends specifically that the trial court should have found that the evidence shows that seven other criteria also applied.

{¶ 10} We are not convinced.

A. *Manner or method of work*

{¶ 11} The first criterion is this: "The person is required to comply with instructions from the other contracting party regarding the manner or method of performing services," R.C. 4123.01(A)(1)(c)(i). The trial court found that much of the evidence relevant to this criterion conflicted. Soloman testified that Fiamengo agreed to let him work under Switzer, but Fiamengo testified to the contrary. Testimony from one of the tenants showed that for the first few windows, Switzer worked with Soloman, telling him how to remove the old window and install the replacement. Yet, the court noted, Soloman testified that Fiamengo did not tell him to follow Switzer's instructions, nor did Fiamengo gave him instructions on how to do the job. The court also pointed to Fiamengo's and Soloman's testimony that Fiamengo told Soloman not to throw windows on the ground and make a mess, and Soloman's response to Fiamengo that he cleans up when he is done. The court said that this testimony "indicates that Soloman did not feel required to follow Dayton Window's instructions."

{¶ 12} Soloman argues that the court's inference is unreasonable. Soloman says that his response was merely the explanation that he gave Fiamengo about why he did not clean up, not a refusal to obey instructions. Soloman also argues that though Switzer was not the

"contracting party," his instructions must be attributed to the contracting party, Fiamengo.

{¶ 13} The evidence does not compel finding that this criterion applies. Regarding the court's inference drawn from Soloman's response to Fiamengo, we observe that the court seems to have gotten the evidence a bit mixed up. According to the testimony, Fiamengo told Soloman not to leave the old windows scattered on the ground—and also not to leave the new windows lying on the ground where they could get dirty. Later, a tenant complained to Fiamengo that Soloman had left his apartment a mess. It was when Fiamengo took Soloman aside and asked him to make sure that he always cleaned up his work area that Soloman told Fiamengo that he cleans up when he is done. Still, even without the court's inference, the evidence does not show that Soloman was required to follow someone else's instructions about how to do the job. No evidence suggests that Soloman was required to perform his services in a particular way. No evidence suggests that Fiamengo told Switzer to show Soloman how to install a replacement window. It could be that Switzer was simply showing Soloman the best way to replace these particular windows. After all, since they had only three days to replace all the windows, it was in both Switzer's and Soloman's interest for Soloman to work quickly.

B. *Work hours*

{¶ 14} The second criterion is this: "The person's hours of work are established by the other contracting party," R.C. 4123.01(A)(1)(c)(vii). The court found that Soloman could work whenever he wanted, as long as the job was done within three days. The court cited Soloman's testimony that Fiamengo, while telling him the date and time that he should show up on the first day, did not tell him when to take breaks or when he could leave for the day.

{¶ 15} Soloman contends that by setting a three-day deadline, Fiamengo did establish his hours of work, citing *Griffith v. Admr., Ohio Bur. of Emp. Serv.* (Sept. 5, 1997), Lake App. No. 96-L-202, 1997 WL 585945. *Griffith*, though, concerns a claim for unemployment compensation. While it considers workers' compensation case law, it does not consider case law that construes the criterion at issue here.

{¶ 16} Telling a hired person that he must work from this hour to this hour shows control over that person, which suggests that the person is an employee. Setting a deadline for the completion of a job does not show the same level of control. It is common for a general contractor to hire a subcontractor to do a particular job on the condition that the subcontractor can complete the job by a certain date. And there is no evidence that Fiamengo did anything other than set a deadline.

{¶ 17} Soloman also contends that by setting a deadline, Fiamengo effectively "required [him] to devote full time to the business of the other contracting party," another statutory criterion, R.C. 4123.01(A)(1)(c)(viii). Therefore, Soloman contends, the requirement that he devote his full time to the job was implied. But, as the court noted, Soloman never testified that he was required to devote his full time to this job. Rather, Soloman testified that Fiamengo never told him not to work for other contractors.

C. *Order of work*

{¶ 18} The third criterion is this: "The person is required to follow the order of work set by the other contracting party," R.C. 4123.01(A)(1)(c)(x). The court cited Soloman's testimony that he followed Switzer's lead on the order in which to install the replacement windows. Soloman also testified that it was Switzer, not Fiamengo, who told him the order.

Based on this testimony, the court found that Soloman failed to show that Fiamengo (the contracting party) required him to follow a set order of work.

{¶ 19} Soloman points to no evidence that suggests that Fiamengo was behind the order in which Switzer told Soloman to work.

D. *Expenses*

{¶ 20} The fourth criterion is this: "The person's expenses are paid for by the other contracting party," R.C. 4123.01(A)(1)(c)(xiii). The court cited Soloman's testimony that his expenses and mileage were not paid by Fiamengo and his testimony that he had no other expenses.

{¶ 21} Soloman contends that the inference that the court should have drawn from his testimony is that all his expenses were paid by Fiamengo. He points to testimony that Fiamengo did pay for the materials and supplies necessary to complete the job. Soloman also notes that Switzer paid for some supplies.

{¶ 22} "Expenses" here refers to personal expenses, which is how the court understood the word and how, as his testimony shows, Soloman too understood it. That Fiamengo and Switzer supplied the tools and materials needed for the job is relevant to the "tools and materials" criterion we consider next, but it does not determine who paid the "person's expenses."

E. *Tools and materials*

{¶ 23} The fifth criterion is this: "The person's tools and materials are furnished by the other contracting party," R.C. 4123.01(A)(1)(c)(xiv). The court cited testimony showing that some materials (e.g., windows, coil stock, caulk) were furnished by Fiamengo. The court

also cited testimony showing that some tools that Soloman used were Switzer's and some were Soloman's own that he brought. Because Fiamengo did not furnish both materials *and* tools, the court found that this criterion did not apply.

{¶ 24} Soloman contends that Switzer was an agent of Fiamengo and was paid by him to let Soloman use his tools so that the job could be completed on time. Therefore, says Soloman, Fiamengo did, in effect, furnish the tools too.

{¶ 25} While this criterion is better supported than the others we have so far reviewed, the evidence is not so strong as to compel finding that it applies. In particular, no evidence supports Soloman's contention that Fiamengo paid Switzer to allow Soloman to use his tools. Undermining this contention, Fiamengo testified that Soloman told him during their initial telephone conversation that he had his own tools.

F. *Availability of services*

{¶ 26} The penultimate criterion is this: "The person does not make the same services available to the general public," R.C. 4123.01(A)(1)(c)(xviii). The court cited Soloman's testimony that he has held himself out as a contractor for 20 years. But Soloman contends that the phrase "same services" must be construed narrowly, citing R.C. 4123.95, which says that the workers' compensation statutes "shall be liberally construed in favor of employees." Soloman points out that he never testified that he held himself out as someone who installed replacement windows.

{¶ 27} Soloman testified that he has been a carpenter for 20 years. In that time he has sided, drywalled, roofed, and even built houses. He has also remodeled kitchens and bathrooms. But he testified that he had never installed windows. But Fiamengo testified

that during their initial telephone conversation, Soloman told him something different. Fiamengo explained that the replacements installed in the apartment were steel-casement windows, which is not the type ordinarily installed in houses. Fiamengo said that when he specifically asked Soloman whether he had experience with this type of window, Soloman told him that "he [had] installed hundreds of them" and that "he [had] installed them for Erie Construction." The trial court could have chosen to believe Fiamengo's testimony, and based on it, the court could reasonably have found that Soloman does offer window-installation services to the public. The weight of the evidence is not to the contrary.

G. *Liability for quitting*

{¶ 28} The final criterion is this: "The person has the right to end the relationship with the other contracting party without incurring liability pursuant to an employment contract or agreement," R.C. 4123.01(A)(1)(c)(xx). The court found that there was no evidence offered in support of this criterion.

{¶ 29} Soloman contends that indirect evidence supports the inference that he could have quit the job without incurring liability, and he points to the absence of evidence to the contrary as support. Soloman also says that the court's finding that Fiamengo had the right to fire him, the criterion in R.C. 4123.01(A)(1)(c)(xix), implies that Soloman had the right to quit without incurring liability. Soloman does not point to any evidence that affirmatively supports this criterion. The weak inferences that he does suggest could be drawn, need not be drawn.

{¶ 30} Competent, credible evidence supports each of the findings of the trial court that are challenged by the appellant. Therefore, we may not disturb the trial court's

determination that Soloman was not an employee of Dayton Window & Door, and consequently not entitled to workers' compensation benefits. The sole assignment of error is overruled.

{¶ 31} The judgment of the trial court is affirmed.

Judgment affirmed.

GRADY, P.J., and FAIN, J., concur.

_____

GRADY, Presiding Judge, concurring.

{¶ 32} Plaintiff-appellant Soloman argues that at least one of seven additional R.C. 4123.01(A)(1)(c) factors should be construed narrowly in his favor to find that he was an employee of Dayton Window & Door Co. and not an independent contractor. Soloman cites R.C. 4123.95 in support of that contention. That section provides: "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

{¶ 33} Generally, whether a claimant for worker's compensation benefits is an employee or an independent contractor turns on the degree of control that the other party to the contract for hire retains over the claimant's work. *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373. We have written that in enacting R.C. 4123.01(A)(1)(c), "the legislature intended to redefine 'employee' and to substitute a statutory test for the traditional common law standard. We also find that the legislative mandate in R.C. 4123.01(A)(1)(c) is unambiguous. As a result, we cannot restrict, qualify, narrow, or enlarge the statute. Instead, we must apply the statute without interpretation." *Slauter v. Klink* (Aug. 18, 2000), Montgomery App. No.

18150, 2000 WL 1162041, *5.

{¶ 34} The liberal-construction provision of R.C. 4123.95 would appear to require that each of the 20 factors in R.C. 4123.01(A)(1)(c) must be weighed by the court in Soloman's favor instead of neutrally as we held in *Slauter v. Klink*. The reason why R.C. 4123.95 does not apply in that respect was explained in *Koch v. Conrad* (Dec. 9, 1997), Franklin App. No. 97APE05-663, 1997 WL 770985, at *3:

{¶ 35} "As an initial matter, R.C. [4123.95], by its very terms, does not apply to the determination of employee status. R.C. 4123.95 states that the workers' compensation statutes 'shall be liberally construed in favor of *employees* and the dependents of deceased *employees.*' (Emphasis added.) However, the statute does not state that we are to liberally construe the meaning of the term 'employee.' Until a person is determined to be an employee, the workers' compensation statutes do not even apply. 'The Workmen's Compensation Act was enacted for the purpose of providing a state insurance fund for the benefit of injured and dependents of skilled employees and requiring contributions thereto by employers. *If the relation of employer and employee does not exist the provisions of the act have no application.*' *Frankhauser [Fankhauser] v. Knight-Ridder Newspaper* (1986), 27 Ohio App.3d 236, 237, 500 N.E.2d 407 (quoting *Coviello v. Indus. Comm.* [1935], 129 Ohio St. 589, 196 N.E. 661, paragraph one of the syllabus) (emphasis added)."

{¶ 36} If the liberal-construction requirements of R.C. 4123.95 were to apply to the factors in R.C. 4123.01(A)(1)(c), then I would find that at least two of the seven additional factors on which Soloman relies require a reversal. However, R.C. 4123.95 does not so apply, *Koch*, and on this record, the trial court's finding that Soloman is an independent

contractor and not an employee for purposes of worker's compensation coverage is supported by competent, credible evidence and therefore must be affirmed. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279.

_____